**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **CINDY STOKES and ANDY STOKES,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:24-cv-281 (MTT)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**ORDER**

In September 2023, Cindy Stokes entered into a settlement agreement with the United States Department of the Air Force for claims asserted under the Longshore and Harbor Workers' Compensation Act ("LHWCA"). ECF 21-2 at 1–6. One of the settled claims also forms the basis of this case, brought by Stokes and her husband, against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–80 ("FTCA"). *Id.*; ECF 1. The United States moves for judgment on the pleadings or, in the alternative, summary judgment, arguing that Stokes' settlement precludes Stokes from pursuing relief under the FTCA and that sovereign immunity bars the suit. ECF 21. For the reasons explained below, the motion (ECF 21) is **GRANTED**.

## I. BACKGROUND[1]

In 2008, Stokes began her employment as a program assistant for the Child and Youth Program at Robins Air Force Base. ECF 21-2 at 1; 21-3 ¶ 1; 23-1 at 1. On

[1] Unless otherwise stated, the following facts are undisputed and are viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

September 29, 2021, before clocking in for work, Stokes allegedly fell in a parking lot adjacent to the Child and Youth Program building. ECF 21-2 at 2; 23-2 ¶¶ 2–4. She claims she tripped over a large concrete parking barrier lying in the middle of the sidewalk. ECF 21-2 at 2; 23-2 ¶ 3. Stokes alleges the Department of the Air Force, not the Child and Youth Program, owned the parking lot. ECF 21-2 at 27; 23-2 ¶ 5. Following the incident, Stokes filed a claim for benefits under the LHWCA with the Department of the Air Force, assigned claim number LS-06457538. ECF 21-2 at 7–12, 27; 21-3 ¶¶ 2, 3; 23-1 at 2; 23-2 ¶ 6. The Court will refer to LS-06457538 as the "Parking Lot Claim."

Stokes had previously filed three other claims under the LHWCA relating to injuries sustained in the course of her employment in 2015, 2016, and 2018. ECF 21-2 at 1–2; 23-2 ¶¶ 9, 10. These claims were pending when Stokes submitted the Parking Lot Claim. ECF 23-2 ¶ 11. The Air Force controverted the Parking Lot Claim, and that claim was set for trial. ECF 21-2 at 27, 42; 23-2 ¶¶ 7, 12, 13. Before trial, however, the parties settled all four claims. ECF 21-2 at 1–6; 21-3 ¶ 4; 23-1 at 2; 23-2 ¶¶ 13, 14. The settlement agreement states the parties "do not wish to pursue this matter, due to the uncertainty of the outcome." ECF 21-2 at 4. Under the settlement agreement, Stokes would receive $52,250 for past, present, and future compensation benefits and past, present, and future medical benefits. *Id.*; ECF 21-3 ¶ 7; 23-1 at 3–4. Stokes' counsel would receive attorney's fees in the amount of $22,500 for all four claims. ECF 21-2 at 4, 42–45; 21-3 ¶ 6; 23-1 at 3. In turn, Stokes' employer would be discharged of "all liability for payment of all compensation and medical benefits and . . . of all liability for

payment of all compensation and medical claims that are raised in the subject claims." ECF 21-2 at 5.

According to the settlement agreement, Stokes had also filed suit under the FTCA for the same injuries at issue in her Parking Lot Claim.[2] *Id.* at 4–5. In a section labeled "disputed issues," the settlement agreement states,

> The following are issues disputed by the parties in the Subject matter: causation, liability for medical benefits, entitlement to compensation, penalties and interest, and attorney fees and costs. Claimant has filed a tort claim against the Department of the Air Force for the slip and fall on September 29, 2021 which is the subject of OWCP claim number LS-06457538. This separate tort claim is not settled by this agreement. In the event Claimant recovers any damages on this claim[,] the Respondents do not waive the right to recover payment made under this settlement.

*Id.*

The settlement provided LHWCA liability would be discharged after "[a]pproval and payment of the lump sum amount." *Id.* at 5. After the parties entered into the settlement agreement, the District Director with the Office of Workers' Compensation Programs ("OWCP") issued an order approving it.[3] ECF 25-1. The Approval Order identifies all four claims as part of the settlement agreement and states: "Approval will effect a final disposition of this claim, discharging the liability of the Employer/Insurance Carrier for such compensation or medical benefits or both as agreed upon and stated above." *Id.* at 1–2. It also states, "[t]his approval is limited to the LHWCA claim

[2] The settlement agreement is dated September 27, 2023. ECF 21-2 at 6. Plaintiffs filed their FTCA complaint here on August 16, 2024. ECF 1.

[3] The United States added the Approval Order to the record following Plaintiffs' response to the United States' motion for judgment on the pleadings or summary judgment. ECF 25-1. Plaintiffs initially made arguments based on the lack of an Approval Order in the record. ECF 23 at 4. After the United States submitted the Approval Order, Plaintiffs withdrew that portion of their response. ECF 28 at 4 n.3.

described in the above findings of fact, and only resolves matters expressly within the jurisdiction of the Longshore Act." *Id.*

## II. STANDARD

The United States moves for judgment on the pleadings or, in the alternative, for summary judgment. ECF 21. The United States' motion for judgment on the pleadings is a factual attack on the Court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Fed. R. Civ. P. 12(b)(1). "Attacks on subject matter jurisdiction, [under] Rule 12(b)(1), come in two forms: facial or factual attack." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021). "A 'facial attack' challenges whether a plaintiff 'has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). A factual attack goes beyond the face of the pleadings, and a court may consider extrinsic evidence. *Id*. When assessing a factual attack, a court "needn't accept the plaintiff's facts as true; rather, 'the district court is free to independently weigh facts' and make the necessary findings." *Gardner v. Mutz*, 962 F.3d 1329, 1340 (11th Cir. 2020) (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)). Therefore, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Shaikh v. Fox News Network, LLC*, 177 F.4th 1274, 1277 (11th Cir. 2026) (citation modified).

In contrast, the summary judgment standard does not permit the Court to evaluate the merits when there are disputed material facts. Rather, the Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party." *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

Thus, Rule 56 places greater restrictions on the district court's review than Rule 12(b)(1). *See Lawrence*, 919 F.2d at 1529 (explaining that on a factual attack under 12(b)(1) "the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56" (quoting *Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir. 1981))). The Eleventh Circuit has cautioned that a "district court should only rely on Rule 12(b)(1) if the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action." *Morrison*, 323 F.3d at 925 (citation modified); *see also Lawrence*, 919 F.2d at 1531 ("[F]ederal claims should not be dismissed on motion for lack of subject matter jurisdiction when that determination is intermeshed with the merits of the claim and when there is a dispute as to a material fact").

Here, the United States challenges the Court's subject matter jurisdiction, arguing that Stokes' approved settlement under the LHWCA precludes her from pursuing relief under the FTCA. ECF 21-1. If Stokes is precluded from pursuing relief under the LHWCA, the United States reasons, the FTCA's waiver of sovereign immunity

does not apply, and the Court lacks jurisdiction. *Id.* at 8–11. Because the sovereign immunity inquiry turns on whether Stokes' settlement agreement and the approval of the agreement preclude Plaintiffs' FTCA claims, the Court applies the more exacting Rule 56 standard here.

Under Rule 56, the burden rests with the moving party to prove that no genuine issue of material fact exists. *Info. Sys. & Networks Corp.*, 281 F.3d at 1224. The party may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party "simply may show . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 1438 (citation modified).

Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.* The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting

*Anderson*, 477 U.S. at 249–50). Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2).

## III. DISCUSSION

Liability of the United States under the LHWCA via the Nonappropriated Fund Instrumentalities Act ("NFIA") is exclusive. 5 U.S.C. § 8173. The statute provides:

> The liability of the United States or of a nonappropriated fund instrumentality described by section 2105(c) of this title, with respect to the disability or death resulting from injury, as defined by section 2(2) of the Longshore and Harbor Workers' Compensation Act (33 U.S.C. 902(2)), of an employee referred to by sections 8171 and 8172 of this title, shall be determined as provided by this subchapter. This liability is *exclusive* and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the disability or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute.

*Id.* (emphasis added).

The exclusive liability provision reflects that "the NFIA was not intended to give injured employees a choice between LHWCA compensation and an FTCA suit. Neither was it intended to give injured workers two chances to maximize their compensation award." *Vilanova v. United States*, 851 F.2d 1, 4 (1st Cir. 1988). Instead, "Congress adopted the principal compromise—the 'quid pro quo'—commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government." *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 194 (1983) (discussing the exclusive liability provision in the Federal Employees'

Compensation Act ("FECA" ) and stating "[t]his compromise is essentially the same as that found, for example, in the Longshoremen's and Harbor Workers' Compensation Act"). Consequently, relief under the LHWCA "acts as a substitute rather than a supplement for FTCA actions." *Vilanova*, 851 F.2d at 4; *Sharp v. Johnson Bros. Corp.*, 973 F.2d 423, 427 (5th Cir. 1992) ("Congress did not intend that the worker be able to pick and choose his remedy based upon which has conferred upon him a larger award.").

The Eleventh Circuit has formulated a test to determine whether the United States' liability under the LHWCA via the NFIA excludes the availability of FTCA relief. *See Wilder v. United States*, 873 F.2d 285, 288 (11th Cir. 1989). District courts must first determine whether a substantial question of coverage under the LHWCA exists. *Id.* A substantial question of coverage exists unless the court determines "as a matter of law that, viewing all of the circumstances, the Secretary could not find [LHWCA] coverage of the alleged injury."[4] *Noble v. United States*, 216 F.3d 1229, 1235 (11th Cir. 2000) (citation modified) (applying exclusivity test in the FECA context); *see Wilder,* 873 F.2d at 288 (applying test for determining exclusive liability under FECA to the LHWCA). If a substantial question of coverage exists, then the plaintiff must first seek and be denied relief under the LHWCA before he may pursue an FTCA claim for the same injury. *Wilder*, 873 F.2d at 288. But if a plaintiff seeks LHWCA relief and the Secretary determines the claim is compensable, then the plaintiff may not seek relief under the FTCA. 5 U.S.C. § 8173.

---

[4] The determination of whether a claim is compensable "should be made in the first instance by the Secretary." *Wilder*, 873 F.2d at 288.

Because Stokes settled the Parking Lot Claim, the Court first considers whether, under the settlement agreement, Stokes received relief that is exclusive under 5 U.S.C. § 8173.[5] Here, the settlement agreement covered all four claims Stokes asserted under the LHWCA, including the Parking Lot Claim, identified as LS-06457538 on the front page of the settlement agreement. ECF 21-2 at 1–6. The settlement agreement states that the parties "agreed to settle all disputed issues of the Subject claim for a lump sum amount." *Id.* at 1. The Department of Air Force had paid all claimed medical benefits for the first three claims but controverted liability for the Parking Lot Claim. *Id.* at 2, 5. But "due to the uncertainty of the outcome," the parties "mutually agreed to compromise their respective differences and settle all issues of Claimant's claims for compensation and medical benefits under the Act." *Id.* at 4. "Accordingly," the settlement agreement provides, "this agreement is intended to resolve and settle any and all compensation and medical issues in this matter." *Id.* It describes the payment Stokes would receive for "past, present, and future compensation benefits" and "all past[,] present[,] and future medical benefits." *Id.* Stokes' counsel agreed to accept "$22,500.00 as attorney's fees and costs."[6] *Id.*

[5] Plaintiffs argue the Court should first ask whether a substantial question of coverage exists and not whether Stokes has already received an exclusive remedy for the Parking Lot Claim via the settlement agreement. ECF 23 at 8–12. But if Stokes has already received exclusive relief under the settlement agreement, she may not pursue additional relief under the FTCA. *See* 5 U.S.C. § 8173. Thus, the Court first considers whether, under the approved settlement agreement, Stokes received exclusive relief for the Parking Lot Claim.

[6] The settlement agreement notes Stokes' counsel's fee petition is "attached as EX-7." ECF 21-2 at 4. Consistent with the settlement agreement, Stokes' attorney stated in his fee petition that the Parking Lot Claim "necessitated an informal conference, and the matter was set for trial" but that "prior to trial, the parties were able to mediate the case and reached a successful resolution on all issues, and settl[ed] all four (4) claims." *Id.* at 42.

Then, pursuant to 33 U.S.C. § 908(i)(1), the parties submitted the settlement agreement for administrative approval. Section 908(i)(1) provides:

> Whenever the parties to any claim for compensation under this chapter, including survivors benefits, agree to a settlement, the deputy commissioner or administrative law judge shall approve the settlement within thirty days unless it is found to be inadequate or procured by duress. Such settlement may include future medical benefits if the parties so agree. No liability of any employer, carrier, or both for medical, disability, or death benefits shall be discharged unless the application for settlement is approved by the deputy commissioner or administrative law judge. If the parties to the settlement are represented by counsel, then agreements shall be deemed approved unless specifically disapproved within thirty days after submission for approval.

33 U.S.C. § 908(i)(1). In addition, § 908(i)(3) states, "[a] settlement approved under this section shall discharge the liability of the employer or carrier, or both." *Id.* § 908(i)(3). The settlement agreement thus provides, "[a]pproval and payment of the lump sum amount will discharge the Employer and Self-Insured Carrier of all liability for payment of all compensation and medical benefits and Employer and Self-Insured Carrier will be discharged of all liability for payment of all compensation and medical claims that are raised in the subject claims."[7] ECF 21-2 at 5.

In sum, once approved, the settlement agreement disposed of all issues relating to compensation and medical benefits for the Parking Lot Claim. Under the approved settlement agreement, Stokes received a lump-sum payment for all four claims (and the Government paid her lawyer's fees for all four claims), and the Department of Air Force

[7] Plaintiffs state in their response brief that "no medical benefits were ever paid for the September 2021 claim." ECF 23 at 13 (citing the settlement agreement, ECF 21-2 at 3–4). As best the Court can tell, Plaintiffs mean that before the approval of the settlement agreement, no payment for medical benefits had been made for the Parking Lot Claim, which is consistent with the settlement agreement. *See* ECF 21-2 at 5 ("Respondents have paid all claimed medical benefits for the first three claims and have controverted liability for the September 29, 2021 claim."). But under the plain terms of the settlement agreement, the parties agreed to settle "all issues of Claimant's claims for compensation *and medical benefits* under the Act," and the settlement agreement provides that Stokes would receive $5,000 "for *all* past[,] present[,] and future medical benefits." *Id.* at 4 (emphasis added).

was discharged of all liability for compensation and medical benefits. *Id.* at 4–5. Because Stokes has already received relief under the LHWCA for the Parking Lot Claim, 5 U.S.C. § 8173 does not permit her to pursue additional or alternative relief for those same injuries under the FTCA.[8]

Plaintiffs argue that the settlement agreement does not bar Plaintiffs' claims because there has been no determination of coverage by a judicial or administrative decision. ECF 23 at 12–15. That's wrong, because the Approval Order determined the claim was compensable. Plaintiffs argue there must be an express determination of coverage because in *Vilanova*, the First Circuit stated that an employee's report of injury and receipt of LHWCA benefits before an employee has had a "meaningful opportunity to challenge [LHWCA] coverage" does not bar a suit under the FTCA. *Id.*; *Vilanova*, 851 F.2d at 2, 5. "[U]ntil coverage has been determined by judicial or administrative decision, acceptance of LHWCA compensation paid voluntarily by the employer or the employer's insurance carrier is not a bar to suit under the FTCA." *Vilanova*, 851 F.2d at 5. Plaintiffs overlook the fact that the plaintiff in *Vilanova* later settled his LHWCA claim, and the First Circuit held that the settlement barred his FTCA suit. *Id.* at 5–6. "As is required by the LHWCA, 33 U.S.C. § 908(i), the Deputy Commissioner of Labor for LHWCA compensation reviewed [the plaintiff's] settlement and, finding that [his] injuries

[8] Because Stokes, by settling the Parking Lot Claim, has already received her exclusive remedy under the LHWCA, the Court need not ask whether a substantial question of coverage exists. But even if the Court were to ask whether there is a substantial question of coverage here, the settlement agreement still presents obstacles for Plaintiffs' FTCA claims. The parties to the LHWCA proceedings desired settlement due to the "uncertainty of the outcome" of the Parking Lot Claim. ECF 21-2 at 4. Stokes thus asks the Court to hold that as a matter of law and viewing all of the circumstances, the Secretary could not find [LHWCA] coverage of the alleged injury despite 1) Stokes' position in the LHWCA proceedings that coverage exists, 2) the parties' agreement that the outcome of the Parking Lot Claim was uncertain, 3) the parties' agreement to compensate Stokes for the Parking Lot Claim in exchange for the discharge of liability, and 4) the approval of the settlement agreement by the OWCP.

were compensable under the LHWCA, approved it." *Id.* at 5. In addition, the plaintiff "did not contest LHWCA coverage before the Department of Labor when he had the opportunity to do so." *Id.* at 6. Instead, "by seeking and then signing the settlement, [the plaintiff] solicited and then acquies[c]ed in the Department of Labor finding that his injuries are compensable." *Id*.

As in *Vilanova*, the District Director for the OWCP approved the settlement of the Parking Lot Claim. ECF 25-1. The Approval Order identifies the claim as part of the settlement agreement and states that Stokes will receive a lump sum of "$47,250.00 for compensation to settle *all* claims" and a lump sum of "$5,000.00 for medical benefits to settle all claims," and that Stokes' counsel would receive "fees and costs associated with all of these claims." *Id.* at 1–2. It also states that "[a]pproval will effect a final disposition of this claim, discharging the liability of the Employer/Insurance Carrier for such compensation or medical benefits or both as agreed upon and stated above" and that the Approval Order "only resolves matters expressly within the jurisdiction of the Longshore Act." *Id.* at 2. Thus, in approving compensation for the Parking Lot Claim, the District Director determined that, at least for the purposes of settlement, the Parking Lot Claim was compensable under the LHWCA.

Stokes is similar to the plaintiff in *Vilanova* in another way. Like the plaintiff in *Vilanova*, Stokes had the opportunity to contest LHWCA coverage for the Parking Lot Claim. Instead, she argued that the Parking Lot Claim was compensable, and she received compensation for it.[9] In doing so, she "solicited and then acquies[c]ed in" her

---

[9] Again, Plaintiffs' argument that "there was no 'substantial question' of coverage as a matter of law" is the opposite of Stokes' position in the LHWCA proceedings. ECF 23 at 9; 21-2 at 4; 25-1 at 1.

compensation award under the LHWCA and received her exclusive remedy. *Vilanova,* 851 F.2d at 6.

In the end, Plaintiffs rely on what they apparently believe is a carveout in the settlement agreement that somehow saves the FTCA claim notwithstanding the statutory and jurisdictional effect of the approved settlement agreement. ECF 23 at 14–15. In a section labeled "disputed issues," the settlement agreement states:

> The following are issues disputed by the parties in the Subject matter: causation, liability for medical benefits, entitlement to compensation, penalties and interest, and attorney fees and costs. Claimant has filed a tort claim against the Department of the Air Force for the slip and fall on September 29, 2021 which is the subject of OWCP claim number LS-06457538. This separate tort claim is not settled by this agreement. In the event Claimant recovers any damages on this claim[,] the Respondents do not waive the right to recover payment made under this settlement.

ECF 21-2 at 4–5. The Court assumes Stokes, relying on this language, sought the guaranteed relief of a settlement under the LHWCA while preserving the chance to pursue claims for the same injuries under the FTCA. If so, she wanted to have her cake and eat it too. But that is precisely what the LHWCA exclusivity provision prevents. Having sought and received compensation and benefits under the LHWCA, Stokes, in return, "los[t] the right to sue the Government." *Lockheed Aircraft Corp.*, 460 U.S. at 194. Stokes had the opportunity to dispute LHWCA coverage and pursue her FTCA claim. Instead, she argued the LHWCA covered the Parking Lot Claim, settled all issues of compensation and medical benefits for that claim, and received payment in exchange for the discharge of liability. In doing so, Stokes received her exclusive relief.[10]

[10] Stokes' husband, Andy Stokes, asserts a derivative claim for loss of consortium. ECF 1 ¶¶ 32–35. Plaintiffs do not dispute that if Cindy Stokes' FTCA claims are barred by the NFIA's exclusivity provision, Andy Stokes' derivative claim is likewise barred. ECF 23 at 1 n.1.

## IV. CONCLUSION

Defendant's motion for judgment as a matter of law, or in the alternative, summary judgment (ECF 21) is **GRANTED**. Stokes' settlement under the LHWCA and the approval of that settlement preclude Plaintiffs from pursuing relief for the same injuries under the FTCA. Consequently, sovereign immunity bars the suit.

**SO ORDERED**, this 18th day of September, 2026.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT